RALPH OLMSTEAD *vs.* EDWIN P. LAMPHIER ET AL. (EDWIN P. LAMPHIER ET AL. APPEAL FROM COMPENSATION COMMISSIONER).

* Third Judicial District, New Haven, June Term, 1918.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

Our Workmen's Compensation Act (Rev. 1918, § 5347) requires the employer to provide a competent physician or surgeon to attend the injured employee, and also "such medical and surgical aid" as such physician or surgeon shall deem reasonable or necessary. *Held* that an artificial leg, to replace the amputated limb of the injured employee, might properly be included as reasonable or necessary "surgical aid."

In addition to the specific indemnity for the loss of one foot at or above the ankle (Rev. 1918, § 5351), an employee who also receives an

---

* Transferred from first judicial district.

injury to his shoulder resulting in partial incapacity is entitled to compensation for that, although both injuries arose from the same accident; the award for this injury, however, is to take effect upon the expiration of the period of total incapacity due to the loss of the leg, as our Act does not contemplate double compensation.

Argued June 5th—decided July 23d, 1918.

APPEAL by the defendant from a finding and award of the Compensation Commissioner for the fifth district in favor of the plaintiff, including therein the cost of an artificial leg and also compensation for an injury to the plaintiff's shoulder in addition to that awarded for the loss of his leg, taken to and reserved by the Superior Court in Litchfield County, *Reed, J.,* upon an agreed statement of facts, for the advice of this court. *Judgment advised for the plaintiff.*

*Harold J. Quinlan,* for the appellants (defendants).

*Wilson H. Pierce,* for the appellee (plaintiff).

WHEELER, J.  On September 26th, 1916, the plaintiff suffered the injuries described below by being thrown from a horse.  His left leg was so lacerated that it had to be amputated above the knee.  His shoulder was so injured as to cause a partial incapacity equal to one half total incapacity from the date of the injury to the time of the hearing, May 9th, 1917, and it continued thereafter.  The Commissioner included in his award compensation at the rate of $7.50 a week for 182 weeks, credit to be taken for payments already made; also $3.75 a week for the partial incapacity resulting from an injury to the shoulder, to continue during such incapacity, not to exceed the time provided by law; also $115, being the price of an artificial leg.

The defendant appealed from so much of the award as gave compensation for the partial incapacity to the shoulder, and that for the price of an artificial leg.

The questions submitted on the reservation were the following: "1. Whether or not the Workmen's Compensation Act of the State of Connecticut imposes a legal duty upon the appellant to purchase for the appellee an artificial leg in accordance with the provisions of § 7 of Part B of that Act, as amended in 1917, as a part of the surgical service and aid therein provided for. 2. Whether or not, under the provisions of said Act, upon the foregoing facts, the appellant, respondent, is legally obliged to pay to appellee, claimant, compensation for partial incapacity arising from the injury to claimant's appellee's shoulder, in addition to the specific indemnity for the loss of the appellee's leg."

In *Franko* v. *Schollhorn Co., ante,* p. 13, we construed § 11 (Rev. 1918, § 5351) of our Act as providing one form of compensation during total incapacity and another for the permanent loss of a member of the body. The injury to the shoulder was a distinct injury resulting in partial incapacity; the loss of the leg was also a distinct injury resulting in partial incapacity. For each injury, under our construction of this section, the injured employee was entitled to compensation. The fact that each injury resulted from one accident did not make of these a single injury. Nor did the Act intend that compensation for the loss of a member should be in lieu of all compensation for other injuries resulting from one accident.

The Superior Court of New Haven County, in Foley *v.* Demarest & Co., pointed out with great force that a contrary construction, carried to its logical conclusion, might limit the compensation in a case of total incapacity to practically nothing. As that court said: "An injury attended with blood poisoning might incapacitate for an entire year and the injured person would be entitled to compensation for that period, provided

no amputation were necessary; but if such injury was attended with the loss even of a small toe or the phalanx of the fourth finger, compensation would be limited to from six to thirteen weeks."

Our Act does not permit double compensation, and hence the trial court was correct in making these awards consecutive; the award for the total incapacity to precede in payment that for the partial incapacity.

The agreed facts on the reservation fall far short of those found by the Commissioner. Who furnished the surgeon does not appear in the agreed statement, nor whether he found the artificial leg "reasonable or necessary." The Commissioner found as a fact, upon evidence, that "surgical aid" included an artificial leg. There is no such finding in the agreed facts. We are left with the bald question, whether surgical aid or service includes the furnishing of an artificial leg. There is no specific provision for the furnishing of medicines, or any material or apparatus required by the physician. Yet it is clear that all these are included in the term medical aid or service. It must also be clear that all necessary bandages, materials, splints and apparatus required by the surgeon in effecting a cure, are included under the term surgical aid or service. The fact is that § 7, as amended by § 2 of Chapter 368 of the Public Acts of 1917 (Rev. 1918, § 5347), is general in its terms, and purposely so. In the New York Act there is a specification of various things to be furnished. We adopted a different course, and used general terms in our Act, intending, as we think, to include all things which might reasonably fall within its provisions. The employer is required to furnish the employee a physician, and in addition "such medical and surgical aid or hospital service as such physician or surgeon shall deem reasonable or necessary." This language is broad and general. "Medical aid" is relief pertain-

ing to the science of medicine; and "surgical aid" is relief pertaining to surgery or used in surgery. Webster's New International Dictionary. The term in its ordinary significance is not limited to the personal service of the surgeon, but includes all the means and instrumentalities used in surgery which will help effect a cure. Splints, and crutches, and apparatus for holding the limb, manifestly are brought to the patient by the surgeon, adjusted by him, and usually paid for directly by the patient. It is part of the duty of the surgeon to prepare the stump of arm or leg for the artificial arm or leg. It is a part of his duty to adjust it. Why give the patient splints to hold the bones in place, or crutches with which to walk, and regard these as used in surgery? Why supply a glass eye? Because it is the every-day duty of the surgeon to order these things for his patient, and they are included as of course under "surgical aid." There is no difference in principle between supplying these and the artificial limb. That pertains to surgery and is used in surgery. The stump must be prepared by the surgeon to receive the artificial limb, and that must be adjusted to the stump by the surgeon. The only difference between the crutch and the artificial limb is that the latter costs more than the former.

Our Act contemplates the furnishing of all the medical and surgical aid that is reasonable and necessary. The purpose of this provision is to restore the injured employee to a place in our industrial life as soon as possible, by the use of all medical and surgical aid and hospital service which the ordinary usages of the modern science of medicine and surgery furnish. Humanity and economic necessity, in this instance, are in harmony in working for the accomplishment of the individual and of the public welfare. "Surgical aid" is a term of technical significance and has an established meaning

in standard works on surgery. The duty of the surgeon does not end with the healing of the stump. "As soon as all sensitiveness has left the end of the bone an artificial limb should be fitted and the patient urged to make efforts to use the extremity." Keen's Surgery, Vol. 5, page 951. The duty of the surgeon continues until the artificial limb is adjusted and the patient has learned how, with the help of the surgeon, to use it properly. It would not be questioned that the entire bill of the surgeon for his services would fall under the head of "surgical aid." It would be difficult to justify this expenditure, as well as that for bandages or ointments or other material used by the surgeon in his treatment of the patient, and not make a like expenditure for the artificial leg in connection with which these things were used.

The Commissioner notes that as a rule insurers and insurance companies furnish, under compensation Acts, artificial teeth, eyes and limbs, when required. Undoubtedly the common understanding revolted at the failure to provide the only means by which the injured employee could be restored to the ranks of industry. Perhaps those in interest also had in mind the small cost of an artificial limb, and the fact that the compensation awarded by our Act was much less than in many other jurisdictions, a fact due in some measure to the complete aid which the Act gives to the cure of the injured.

Judgment advised in accordance with foregoing opinion dismissing appeal.

In this opinion RORABACK, BEACH and SHUMWAY, Js., concurred.

PRENTICE, C. J. (dissenting). I am unable to concur in that portion of the majority opinion which ap-

proves of the Commissioner's allowance for an artificial leg as one justified by the provision of the statute requiring an employer to furnish an injured employee such surgical aid as the attending physician or surgeon shall deem reasonable. To my thinking the provision of artificial limbs for the improvement of physical efficiency, following such repair of the consequences of injuries received as the circumstances will permit, lies outside the sphere of the surgeon's professional activities as that sphere is commonly understood and established by actual practice. Such provision, as I understand it, partakes of the character of mechanical rather than surgical aid. I am further of the opinion that if it was the legislative intent to impose the burden of supplying such appliances upon the employer, more appropriate and certain language to that end would have been employed, and some attempt made to assure the use of the money exacted of the employer for the purpose intended and to prevent its diversion to other purposes or squandered, as the employee may prefer.