EDWARD LOFTUS *v.* RAY VINCENT
(AC 16681)

Foti, Lavery and Shea, Js.

---

Argued February 25—officially released June 16, 1998

*Prescott W. May,* for the appellant (defendant).

*Bruce S. Gordon,* with whom were *Ronald D. Japha* and, on the brief, *Richard S. Scalo* and *Abraham I. Gordon,* for the appellee (plaintiff).

*Opinion*

SHEA, J. The defendant, Ray Vincent, doing business as Vincent's Texaco, appeals from the decision of the workers' compensation commissioner that the defendant violated General Statutes § 31-290a (a)[1] by discharging his employee, Edward Loftus, the plaintiff, because of a workers' compensation claim that arose in the course of his employment. The commissioner

---

[1] General Statutes § 31-290a (a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

awarded the plaintiff "damages," "out-of-pocket" costs and attorney's fees.

The defendant contends that the decision should be reversed for the following reasons: (1) the plaintiff was never discharged; (2) the evidence is insufficient to satisfy the requirements established by our precedent for proof of a wrongful termination; (3) one of the commissioner's findings is unsupported by the evidence; and (4) the commissioner's award should be reduced by the amount the plaintiff received as workers' compensation benefits during the period for which the commissioner awarded him back wages. We conclude that only the final claim has merit.

The relevant facts are taken from the commissioner's findings. The plaintiff began working for the defendant, who operated a service station, in August, 1994, averaging forty-four hours per week. On May 21, 1995, the plaintiff was working the 2 p.m. to 11 p.m. shift when, at approximately 9 p.m., he injured his back as he was emptying a garbage can into the dumpster on the premises. He immediately telephoned his employer, the defendant, informed him of his injury and requested assistance. The defendant told him to close the gas station early and, if necessary, to go to a hospital.

The plaintiff had begun to close the gas station when the defendant telephoned and inquired about the nature of the plaintiff's injury and how it occurred. The defendant indicated that he was doubtful about the plaintiff's account of the accident. The plaintiff closed the gas station early and went to a hospital emergency room, where he was treated for his injury and released. A physician at the hospital gave him a note for his employer indicating that he should not work for three days.

The next morning, the plaintiff sent his son to deliver the note to the defendant. The defendant refused to

accept or read the note and told the son to inform the plaintiff that he must return his keys and uniforms immediately or he would call the police. When his son returned with this message, the plaintiff telephoned the defendant and, after a heated discussion, the defendant again threatened to call the police if the plaintiff failed to return the keys and uniforms immediately. The plaintiff sent his son back to the defendant's house to deliver the keys and uniforms as requested. The plaintiff never attempted to return to his job at the defendant's gas station, nor did the defendant request that he return.

## I

The defendant maintains that, because he never told the plaintiff expressly that he was discharged or fired, the plaintiff has not established an essential element of his case.

Section 31-290a (a) contains no requirement that any particular word be used in the process of terminating an employee's employment. Any words or conduct that an employee would reasonably understand to signify that his employment was terminated are sufficient. On appeal, the defendant does not contest the commissioner's finding that the defendant told the plaintiff during their telephone conversation on May 22, 1995, that the uniforms and keys to the gas station should be delivered to the defendant immediately, or he would call the police. The defendant does not challenge the finding that he had given the same message to the plaintiff's son earlier that morning. The defendant's conduct does not warrant any inference that the plaintiff should have drawn from the demand that he return the items he needed to continue his employment, except that his employment was terminated. We conclude that the finding of a discharge is amply supported by the evidence.

## II

The defendant maintains that the evidence presented to the commissioner fails to satisfy the standards established in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 54, 578 A.2d 1054 (1990), for proof of a retaliatory discharge in violation of § 31-290a (a). We disagree.

"The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy [his] burden of persuading the factfinder that [he] was the victim of discrimination either directly by persuading the court . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) Id., 53–54.

Despite the defendant's claim to the contrary, we conclude that the commissioner's factual findings and the conclusions drawn therefrom adequately satisfy these criteria. The commissioner found that (1) the plaintiff had worked several years for the defendant and had a good work history, (2) after the plaintiff had quit his employment at the gas station, approximately one month before his discharge, the defendant persuaded him to return and allowed him to earn substantial amounts of overtime pay at the gas station, (3)

although the defendant briefly discussed a customer complaint with the plaintiff at the start of his shift on the date he was injured, their relationship remained harmonious until the plaintiff telephoned him about his injury and the defendant realized that a workers' compensation claim might arise and (4) the reaction of the defendant, when he received the note from a physician directing a suspension of the plaintiff's employment for three days, was highly significant in establishing that the plaintiff's discharge had resulted from the defendant's concern about his liability for a workers' compensation claim.[2] Those findings are adequately supported by the evidence and sufficiently establish a prima facie case of a violation of § 31-290a (a).

### III

The finding that the defendant claims is not supported by the evidence relates to testimony of a witness called by the defendant at the hearing. At the hearing, the defendant testified that he was not satisfied with the plaintiff's job performance because of numerous complaints from customers about his refusing to check the oil in their engines, closing the station early and telling them falsely that the air compressor was not working when they wanted him to inflate their tires. Only one of those customers, however, testified at the hearing. She said that "about a year ago" she had gone to the gas station and asked the plaintiff to check the oil in her car, but he had refused in a very rude manner. The date of the hearing was August 14, 1996, and "about a year ago" would refer to approximately August 14, 1995. The defendant concedes that the plaintiff did not work at the gas station after May 21, 1995. The commissioner's finding mistakenly assumes that this witness was

---

[2] The plaintiff testified at the hearing that, in their telephone conversation the morning after the injury occurred, the defendant had talked about the workers' compensation claim and his concern about such a claim.

referring to a date "approximately one year before" May 21, 1995, i.e., May 21, 1994. One of the commissioner's conclusions alludes to "questionable witness testimony" presented by the defendant in his "futile attempt to characterize the [plaintiff] as a poor employee."

The commissioner's misapprehension concerning the time of the incident related by the customer is of little consequence, however, in view of his remaining conclusions, which are well supported by the evidence. Significantly, he concluded that the "employer's termination of the [plaintiff] began within a short time of the [plaintiff's] first notifying the employer of his injury on the night of May 21, 1995, as was manifested by the employer's return phone call to the [plaintiff] at the business shortly after the [plaintiff] made the initial phone call, at which time the employer began to question the cause of [the plaintiff's] injury and deny that it could have happened as described by the [plaintiff]." Although the defendant may not have been wholly satisfied with the plaintiff's performance, he never indicated that he intended to discharge him until after he learned of the plaintiff's injury. As the fact finder, the commissioner had broad discretion in determining the facts. Nothing in the defendant's presentation obligated the commissioner to conclude that the defendant had rebutted the presumption that arose from the plaintiff's prima facie case. The determination of factual issues depends largely on the fact finder's evaluation of the credibility of witnesses and an appellate court must accept the fact finder's resolution of those issues if it is reasonably supported by the evidence. *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 276–77, 439 A.2d 314 (1981). The commissioner's findings satisfy that standard.

## IV

The defendant's final claim is that the commissioner failed to offset the award of $12,747.24 by the amount

that the plaintiff received as workers' compensation benefits as a result of the injury he sustained on May 21, 1995, the day before he was discharged. In his decision, the commissioner does not mention the compensation benefits the plaintiff received, but during oral argument it was not disputed that the amount of those payments was approximately $6000.

Long ago, this state adopted the position that "[o]ur [Workers' Compensation] Act does not permit double compensation." *Olmstead* v. *Lamphier*, 93 Conn. 20, 23, 104 A. 488 (1918). When an injury entitles a worker to benefits both under the compensation statute and under other legislation, so that a double burden would be imposed on the employer, our courts have held that compensation payments during the period of disability reduce the employer's obligation created by other legislation. *Maciejewski* v. *West Hartford*, 194 Conn. 139, 151, 480 A.2d 519 (1984); *Middletown* v. *Local 1073*, 1 Conn. App. 58, 65–66, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). A similar policy of avoiding a double recovery or double burden is incorporated in General Statutes § 31-314: "In fixing the amount of any compensation under this chapter, due allowance shall be made for any sum which the employer has paid to any injured employee or to his dependents on account of the injury, except such sums as the employer has expended or directed to be expended for medical, surgical or hospital service." Because both that provision and § 31-290a are contained in chapter 568 of our statutes, it is evident that the legislature did not intend to impose on the employer the double burden of back wages and workers' compensation payments for the same period of unemployment.

The plaintiff maintains that workers' compensation payments cannot be offset against an award for retalia-

tory discharge because of the collateral source rule. We need not explore the intricacies of that claim.[3] In this case, both the retaliatory discharge and the workers' compensation awards involve the same source, the defendant, and the period for which an allowance of back wages was made by the commissioner overlaps the period of disability resulting from the injury.

The plaintiff also contends that, unlike the Workers' Compensation Act, which imposes liability on the employer regardless of fault for injuries sustained during employment, § 31-290a applies only to the intentional act of an employer in discharging an employee for a reason prohibited by law. We are not concerned with the possible merit of that argument in an action at law pursuant to § 31-290a (b), in which the statute provides for an award of "punitive damages" and "any other damages caused by such discrimination or discharge" in addition to reinstatement of the job, back wages, reestablishment of employee benefits and reasonable attorney's fees. The plaintiff elected the forum provided by the commissioner for adjudication of his claim. In a proceeding before the commissioner under § 31-290a (b), there is no provision for "punitive damages" or "any other damages caused by" a retaliatory discharge. The only monetary awards that the commissioner was authorized to make were back wages and reasonable attorney's fees.

Although we affirm the commissioner's finding of a retaliatory discharge in violation of § 31-290a (b), the award of back wages must be reversed because of the failure of the commissioner to make "due allowance," as required by § 31-314, for the payments made by the defendant during the period of the plaintiff's disability resulting from his injury.

---

[3] See 4 A. Larson & L. Larson, Workers' Compensation Law § 57.65 (1997); 9 A. Larson & L. Larson, supra, §§ 96.00 through 97.53 (1997).

The decision of the workers' compensation commissioner is reversed only as to the award of back wages, and the case is remanded to the commissioner for further proceedings consistent with this opinion.

In this opinion the other judges concurred.