ROBERT A. SOKOLOSKI *v.* CAMERON A. MCCORISON ET AL.
(AC 28436)

McLachlan, Lavine and Foti, Js.

Argued March 11—officially released June 10, 2008

*Henry C. Ide,* for the appellants (named defendant et al.).

*Timothy Brignole,* with whom, on the brief, was *Juri E. Taalman,* for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendants, Cameron A. McCorison and his mother, Andrea McCorisin,[1] appeal from the judgment of the trial court rendered in favor of the plaintiff, Robert A. Sokoloski, in this quiet title action concerning a boundary dispute. On appeal, the defendants claim, alternatively, that the court improperly concluded that the plaintiff (1) was the fee simple owner of the land in dispute, (2) had a right-of-way over the land in dispute by way of adverse possession and (3) had a prescriptive easement over the land in dispute.[2]

---

[1] Mary Ann Krasnoger and the Connecticut Attorneys Title Insurance Company also were named as defendants. Krasnoger is not a party to this appeal, and the action against the title insurance company was withdrawn before trial. We therefore refer in this opinion to the McCorisons as the defendants

[2] The court rendered judgment in favor of the plaintiff on counts one (adverse possession), two (quiet title) and three (precriptive easement) of his complaint and for Mary Ann Krasnoger, a former owner of the plaintiff's land, on counts four and five.

We conclude that the court properly determined that the plaintiff was the fee simple owner of the land in dispute and, therefore, affirm the judgment of the trial court.[3]

In its detailed memorandum of decision, the court found the following relevant facts, which are not in dispute. In 1953, Thomas Krasnoger, Sr., and his wife, Agnes Krasnoger (Krasnoger parents), owned thirty acres of land from east of North Road in East Granby to the Granby-East Granby town line, known as 56 North Road. On January 9, 1954, the Krasnoger parents subdivided a portion of their land to the south by quitclaiming two parcels of it, one to their son, Thomas Krasnoger, Jr., and one to their son, Frank Krasnoger. Thomas Krasnoger, Jr., received what is now known as 54 North Road,[4] and Frank Krasnoger received what is now known as 52 North Road. The dispute in this case concerns the boundary between 54 North Road and 56 North Road, which arose subsequent to the plaintiff's purchasing 54 North Road from Thomas Krasnoger, Jr., and Mary Ann Krasnoger on September 28, 1993.

The defendants obtained interests in 56 North Road by devise from Agnes Krasnoger. In 2004, Wilson M. Alford, Jr., prepared an A-2 survey (Alford survey) as part of the settlement of the estate of Agnes Krasnoger. After receiving the Alford survey, Cameron McCorison confronted the plaintiff regarding the location of the boundary between 56 North Road and 54 North Road. Steven C. Cotton, Sr., of Henry C. Cotton & Associates, prepared an A-2 survey dated September 17, 2004, revised October 19, 2004 (Cotton survey).

---

[3] Because we conclude that the court properly determined that the plaintiff was the fee simple owner of the land in dispute, we need not consider the defendants' other claims.

[4] Thomas Krasnoger, Jr., quitclaimed 54 North Road through a straw man to himself and to Mary Ann Krasnoger in 1956. The quitclaim deeds were placed into evidence.

By complaint dated December 9, 2004, the plaintiff alleged six counts to settle the issue of the land in dispute created by the question of the location of the boundary between 54 North Road and 56 North Road. Only count two, alleged pursuant to General Statutes § 47-31, the quiet title statute, is at issue here. In simplest terms, the question is whether the boundary between the two properties extends easterly and perpendicularly from North Road, as the plaintiff claims, or whether the southern boundary of 56 North Road extends southeasterly from North Road forming an obtuse angle, as the defendants claim. The land in dispute lies between the claimed perpendicular boundary and the claimed obtuse boundary. The evidence presented at trial, which was held in July, 2006, consisted of testimony from fact and expert (surveyor) witnesses, deeds of conveyance and surveys concerning the subject properties and other documents.[5]

On the basis of the totality of the evidence, the court found by clear and convincing evidence that the plaintiff is the owner in fee simple of the area marked as "disputed area" in the plaintiff's exhibit four, the Cotton survey. To make that determination, the court found that the boundary between 54 North Road and 56 North Road runs east, perpendicular to North Road, as the plaintiff claimed. The court ordered Cotton to prepare an A-2 survey of 54 North Road in accordance with the court's findings with appropriate language for the

---

[5] Cotton testified that his firm was asked to examine the land records to ascertain what they indicated and then to perform a boundary survey of the property. Cotton examined deeds in the East Granby land records. No map was filed on the land records when the Krasnoger parents subdivided their land. No maps were filed between 1954 and September, 2004, that identified 52 North Road, 54 North Road and 56 North Road. Cotton found maps of abutting properties that depicted the boundaries of 56 North Road, prior to its subdivision. Cotton used the quitclaim deeds of the Krasnoger parents to Thomas Krasnoger, Jr., and to Frank Krasnoger to establish the boundaries of 54 North Road.

court's signature to be placed on the land records of the town of East Granby. The defendants appealed.

On appeal, the defendants claim that the court improperly found, pursuant to § 47-31,[6] that the plaintiff was the fee simple owner of the land in dispute. In their brief, the defendants do not dispute that the plaintiff is the owner in fee simple of a piece of property in the shape of a parallelogram on North Road with 130 feet of frontage on North Road and running 200 feet to the rear in a generally southeasterly direction. The defendants contend, however, that the court erroneously found that the deeds to 54 North Road described the shape of 54 North Road as being a rectangle.

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Remington Investments, Inc.* v. *National Properties, Inc.*, 49 Conn. App. 789, 797, 716 A.2d 141 (1998). "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there *is* evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Emphasis in original; internal quotation marks omitted.) *MacDonald* v. *Pinto*, 62 Conn. App. 317, 320, 771 A.2d 156 (2001).

In support of their claim, the defendants argue that the court improperly relied on the testimony of Mary

---

[6] General Statutes § 47-31 (a) provides in relevant part: "An action may be brought by any person claiming title to, or any interest in, real . . . property . . . against any person who may claim to own the property . . . in fee . . . adverse to the plaintiff . . . for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . ."

Ann Krasnoger, the plaintiff and Cotton as to the location of the boundary between 54 North Road and 56 North Road, which is relevant only to the plaintiff's claim of adverse possession[7] and is not written indicia of title in contravention of § 47-31 (f)[8] and *Clark* v. *Drska*, 1 Conn. App. 481, 473 A.2d 325 (1984).

This court has construed § 47-31 (f) "as requiring a determination of record title before the issue of adverse possession is reached. Such a construction is based on the fact that the statute lists things which fall into the same category, that of written documentation of title. If the words 'sources of title' were broad enough to include facts comprising adverse possession, the words 'determine the construction of the same' would make no sense. It is the written indicia of title to which the statute refers." Id., 488.

The court found that the plaintiff's exhibit three, a mortgage survey prepared for Society for Savings in April, 1956, describes 54 North Road as being rectangular in shape. Although the court found that the Society for Savings survey was only a class D survey, all of the deeds in the chain of title from the Krasnoger parents to the plaintiff describe 54 North Road as being a rectangle, namely, 130 feet along North Road and the easterly boundary and 200 feet on the northerly and southerly boundaries.

The court found the plaintiff's exhibit five to be particularly damaging to the defendants' case. Exhibit five is an application for a building permit dated July 2, 1958, signed by Thomas Krasnoger, Jr., for permission to build a garage. The application states that the side yard

---

[7] In count one of his complaint, the plaintiff alleged that he had acquired fee ownership of the land in dispute by way of adverse possession.

[8] General Statutes § 47-31 (f) provides: "The court shall hear the several claims and determine the rights of the parties, which derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property."

from the most northerly corner of the garage to the northerly boundary of the property owned by Thomas Krasnoger, Jr., and Mary Ann Krasnoger is fifty feet. Using the scale on the Cotton survey, fifty feet would extend to the boundary line claimed by the plaintiff. Using the same scale to measure the most northernly corner of the garage to the boundary claimed by the defendants would be a distance of five feet. Five feet is less than the setback required by the East Granby zoning code, which went into effect in 1957. The court found most important the belief of Thomas Krasnoger, Jr., expressed in the building application, that the side yard was fifty feet from his property line.

On the basis of our review of the pleadings, the court's memorandum of decision and the evidence presented at trial, we conclude that the court's decision is grounded in written indicia of title. See footnote 5; cf. *Loeb* v. *Al-Mor Corp.*, 42 Conn. Sup. 279, 615 A.2d 182 (1991) (quieting title pursuant to deeds in chains of title and stipulation of parties), aff'd, 224 Conn. 6, 615 A.2d 149 (1992). At trial, the court was presented with two class A-2 surveys, both prepared in 2004. It is significant that the court made a specific and detailed finding of credibility. It found Cotton to be a more credible expert witness than Alford.[9] A reviewing court does not judge

---

[9] The Alford survey is primarily concerned with the present boundaries of 56 North Road, and Alford did not perform a comprehensive examination of the field, as did Cotton. Alford relied on only one map, that of the adjacent Serafin property. The court also noted that Alford misspelled the plaintiff's name on his survey, contradicted himself and was inarticulate during his testimony.

Moreover, the court found the plaintiff and Cotton to be more credible witnesses than Mary Ann Krasnoger, as her testimony at trial was often at odds with her deposition testimony, in which she admitted that the shape of 54 North Road was a rectangle. The court found a notation on the Cotton survey determinative. The Cotton survey "with the name correctly spelled, dated September 17, 2004, and revised October 19, 2004, to show the disputed area . . . was made on or about the time of the revision . . . ."

The notation states: "In October, 2004, former owner Mary Ann Krasnoger, present owner Robert A. Sokoloski and Stephen S. Cotton, Sr., L.S. met at site to review disputed southerly property line of land now owned by Cameron A.

the credibility determinations of the trier of fact. "Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude." (Internal quotation marks omitted.) *McCarthy* v. *Ward Leonard Electric Co.*, 104 Conn. App. 535, 545, 935 A.2d 189 (2007). "It is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert . . . . The trier may accept or reject, in whole or in part, the testimony of an expert." (Internal quotation marks omitted.) *Chesler* v. *Derby*, 96 Conn. App. 207, 218, 899 A.2d 624, cert. denied, 280 Conn. 909, 907 A.2d 88 (2006).

The judgment is affirmed.

In this opinion the other judges concurred.

McCorison abutting land owned by Robert A. Sokoloski. See line 'A' to 'B' as depicted on this plan. According to Mary Ann Krasnoger, said line is the recognized property line that she and her deceased husband, Thomas Krasnoger, Jr., maintained from January, 1954 to September 1993, and is also the line shown to Robert A. Sokoloski at time of conveyance in September of 1993."