KENNETH MCFARLAND *v.* DEPARTMENT OF
DEVELOPMENTAL SERVICES ET AL.
(AC 29525)

Bishop, DiPentima and Lavine, Js.

Argued February 20—officially released June 23, 2009

*Michael J. Belzer,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (named defendant).

*Edward T. Dodd, Jr.,* with whom, on the brief, was *Laura Ondrush,* for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant department of developmental services[1] appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) awarding the plaintiff, Kenneth

---

[1] GAB Robins North America, Inc., was named as a defendant in this case. For convenience, we refer in this opinion to the department as the defendant.

McFarland, temporary total disability payments, interest[2] and attorney's fees. On appeal, the defendant claims that the commissioner improperly (1) ordered payment of temporary total disability benefits even though the plaintiff had received his full wages, (2) denied its motion to correct, (3) found the plaintiff to be a credible witness and (4) awarded attorney's fees. We agree with some of the defendant's claims and, accordingly, reverse in part and affirm in part the decision of the board.

The following factual and procedural history is relevant to the issues presented on appeal. The plaintiff had been a longtime employee of the defendant. In May, 1987, he suffered a compensable injury to his right shoulder for which he received all benefits to which he was entitled.[3] In May, 1996, the plaintiff sustained a second injury to his right shoulder that also was deemed compensable.[4] That injury required surgery, and the plaintiff again received all benefits to which he was entitled. The plaintiff's right shoulder progressively became more symptomatic and required treatment from Michael J. Kaplan, the surgeon who previously had operated on the plaintiff's shoulder. Kaplan opined that the plaintiff became temporarily totally disabled[5] from June

---

[2] We note that the defendant has not challenged the commissioner's award of interest, and, therefore, it is not a subject for review on appeal.

[3] The plaintiff had been assigned a 21 percent permanent partial disability rating to his right shoulder.

[4] The plaintiff has been assigned an additional 10 percent permanent partial disability rating to his right shoulder.

[5] "There are two types of workers' compensation disability in Connecticut for which benefits may be awarded: total incapacity and partial incapacity. See General Statutes §§ 31-307 and 31-308. Within total incapacity there are two categories: temporary total incapacity and permanent total incapacity. Temporary total incapacity applies to an employee . . . who is unable to seek any type of employment because of disability. Total permanent incapacity refers to an employee who is totally incapacitated and receives an additional benefit based on the permanent loss of a body part. This is in contrast to partial disability, where the employee is able to find alternative employment but experiences a wage loss as a result of the disability." *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 182–83 n.1, 801 A.2d 783 (2002).

16, 2004, to March 29, 2005.[6] During this time period, the plaintiff received only twelve weeks of temporary total disability payments.

On August 14, 2004, Craig Foster, a physician, performed an independent medical examination. Foster diagnosed the plaintiff with early arthritis and assigned a 12 percent disability rating to the plaintiff's right shoulder. Foster did not review any other medical reports pertaining to the plaintiff, including any of the prior injuries to his right shoulder.

The commissioner found that the plaintiff was entitled to temporary total disability benefits, for the approximate nine month time period from June 16, 2004, to March 29, 2005. The commissioner determined that the defendant had withheld payment of the temporary total disability payments because the plaintiff had been suspended without pay as a result of a disciplinary matter. Specifically, the commissioner found that the defendant had "believed that it would prevail in [the disciplinary] hearing and that [the plaintiff] would then be obligated to refund money to the [state]. Their failure to pay temporary total disability benefits would minimize the amount [the plaintiff] would have to refund . . . ."

Subsequent to June 1, 2005, the plaintiff was exonerated from any fault or responsibility with respect to the disciplinary hearing. The defendant then paid all wages owed to the plaintiff for the time period of his total disability. Aside from the twelve weeks of benefits, the plaintiff had not received any other disability benefits for the time that he was totally disabled. The commissioner found the delay of benefits to be unreasonable and awarded the plaintiff interest and attorney's fees.[7]

---

[6] Kaplan diagnosed the plaintiff with post-traumatic arthrosis.

[7] The commissioner's award stated that the amount of attorney's fees would be "determined by evidence and testimony at a future hearing."

The defendant filed its appeal from the commissioner's decision to the board on December 27, 2006. On January 4, 2007, the defendant filed a motion to correct the commissioner's decision. On January 12, 2007, the commissioner denied the motion to correct in its entirety.

On December 21, 2007, the board issued its decision affirming the commissioner's finding and award. The board concluded that the commissioner's factual findings were supported by the record, that the plaintiff was entitled to workers' compensation benefits and that the award of interest and attorney's fees did not constitute an abuse of discretion. This appeal followed. Additional facts will be set forth as necessary.

Before addressing the specific claims presented by the defendant, we set forth certain general principles pertaining to our workers' compensation jurisprudence. "Our workers' compensation scheme indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation [benefits]. . . . To recover under the Workers' Compensation Act [General Statutes § 31-275 et seq.], a plaintiff must prove that the claimed injury is connected causally to the employment by demonstrating that the injury (1) arose out of the employment and (2) occurred in the course of the employment." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 105 Conn. App. 669, 677, 939 A.2d 591, cert. granted on other grounds, 286 Conn. 916, 917, 945 A.2d 977 (2008).

"A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board pursuant to General Statutes § 31-301. The board is obliged to hear the appeal on the record and not retry the facts.

. . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the . . . [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Brown* v. *United Technologies Corp.*, 112 Conn. App. 492, 496–97, 963 A.2d 1027, cert. granted on other grounds, 291 Conn. 906, 967 A.2d 1220 (2009); see also *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 323, 823 A.2d 1223 (2003).

I

The defendant first claims that the commissioner improperly ordered payment of temporary total disability benefits even though the plaintiff had received his full wages. Specifically, it argues that the plaintiff's receipt of both his full wages and temporary total disability benefits for the same time period constitutes a double recovery.[8] We agree that the commissioner's decision permits such a double recovery and therefore is improper.

---

[8] In his brief, the plaintiff states that "[o]bviously [he] is not asserting any right to a double recovery here, as he would be required to reimburse the [defendant] for any temporary total benefits paid, minus the interest and attorney's fees." At oral argument, counsel for the plaintiff offered to stipulate that the plaintiff was not seeking a double recovery. The court rejected his offer, noting that it was limited to consideration only of the record before it.

Furthermore, we note that in his brief to the board and in his appellate brief, the plaintiff stated that he would be obligated to reimburse the defendant for his temporary total disability benefits, but at oral argument, he offered to reimburse the state for his wages, not the temporary total disability benefits.

The following additional facts are necessary for our discussion. Between June 16, 2004, and March 29, 2005, the plaintiff received only twelve weeks of temporary total disability payments. At some point during this time period, the plaintiff became involved in a disciplinary hearing and was suspended without pay. Subsequent to June 1, 2005, the plaintiff was exonerated from any wrongdoing, and the defendant paid the plaintiff his wages for the aforementioned time period. It bears emphasizing that both parties agree that the plaintiff received all of his wages for the time period during which he was temporarily totally disabled.

In his decision, the commissioner ordered the defendant to pay the plaintiff, inter alia, temporary total disability payments from June 16, 2004, until March 29, 2005. The defendant does not challenge the commissioner's finding that the plaintiff met his burden of establishing his entitlement to workers' compensation benefits.[9] The defendant does challenge the commissioner's failure to consider the defendant's prior payment of wages for that time period. The record indicates that the plaintiff has received wages and temporary total disability benefits for the same period. In other words, the commissioner did not order a deduction or offset to prevent a double recovery.[10]

---

[9] "In workers' compensation cases, the injured employee bears the burden of proof, not only with respect to whether an injury was causally connected to the workplace, but that such proof must be established by competent evidence." (Internal quotation marks omitted.) *Greene* v. *Aces Access*, 110 Conn. App. 648, 651–52, 955 A.2d 616 (2008).

[10] In *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 186–89, 801 A.2d 783 (2002), our Supreme Court held that General Statutes § 31-307 (a) contained no provision for the discontinuance of temporary total disability benefits on the basis of the subsequent incarceration of the injured employee. It reasoned that it was not the role of the court to engraft language into the intricate and comprehensive workers' compensation scheme.

We are not aware of language in our statutes that expressly prohibits the receipt of both wages and temporary total disability benefits. Nevertheless, despite the lack of such an express prohibition, we must construe statutes "in view of [their] societal purpose in order to obtain a result which is neither incongruous nor irrational." (Internal quotation marks omitted.)

In *Loftus* v. *Vincent*, 49 Conn. App. 66, 713 A.2d 892 (1998), this court considered a situation similar to the present case. In *Loftus*, the plaintiff injured his back while working at the defendant's service station. Id., 68. The defendant became suspicious of the plaintiff's injuries and refused to read the physician's note stating that the plaintiff should not work for three days. Id., 68–69. The next day, the defendant threatened to call the police if the plaintiff did not return his keys and uniform. Id., 69. This court affirmed the commissioner's decision that the defendant committed a retaliatory discharge in violation of General Statutes § 31-290a. Id., 70–71.

We agreed, however, with the defendant in *Loftus* that the commissioner failed to offset the award by the amount of workers' compensation received by the plaintiff. Id., 72–74. Specifically, we stated: "Long ago, this state adopted the position that [o]ur [Workers' Compensation] Act does not permit double compensation. . . . When an injury entitles a worker to benefits both under the compensation statute and under other legislation, so that a double burden would be imposed on the employer, our courts have held that compensation payments during the period of disability reduce the employer's obligation created by other legislation. . . . A similar policy of avoiding a double recovery or double burden is incorporated in General Statutes § 31-314: In fixing the amount of any compensation under this chapter, due allowance shall be made for any sum which the employer has paid to any injured employee or to his dependents on account of the injury, except such sums as the employer has expended or directed to be expended for medical, surgical or hospital service.

*Ancona* v. *Norwalk*, 217 Conn. 50, 56, 584 A.2d 454 (1991); see also *Middletown* v. *Local 1073*, 1 Conn. App. 58, 63, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984).

Because both that provision and § 31-290a are contained in chapter 568 of our statutes, *it is evident that the legislature did not intend to impose on the employer the double burden of back wages and workers' compensation payments for the same period of unemployment.* . . . In this case, both the retaliatory discharge and the workers' compensation awards involve the same source, the defendant, and the period for which an allowance of back wages was made by the commissioner overlaps the period of disability resulting from the injury." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 73–74.

Likewise, the plaintiff in the present case received wages and benefits for the same time period. As observed by a member of this panel at oral argument, there is nothing in the commissioner's decision as affirmed by the board that would require the plaintiff to reimburse the defendant. Were the commissioner's decision to stand unchallenged, the plaintiff would receive both his wages and the temporary total disability benefits, with no mechanism to effectuate the return of one to the defendant.[11] We cannot countenance such a double recovery. As we noted previously, our workers' compensation jurisprudence has long prohibited such "double dipping." *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 660, 916 A.2d 803 (2007); see also *Ancona* v. *Norwalk*, 217 Conn. 50, 56, 584 A.2d 454 (1991); *Olmstead* v. *Lamphier*, 93 Conn. 20, 23, 104 A. 488 (1918). We therefore reverse the decision of the board affirming the decision of the commissioner as to the amount of the award of temporary total disability benefits and remand the matter for a calculation by the commissioner of the amount due to the plaintiff.

---

[11] We do not suggest that there are no means by which the defendant could attempt to seek reimbursement.

## II

The defendant next claims that the commissioner improperly denied its motion to correct. Specifically, it argues that certain facts found by the commissioner were unsupported by the record and that other facts should have been included in the commissioner's findings. We agree with some of the arguments presented by the defendant.

We begin by setting forth the applicable standard of review and legal principles that guide our resolution of the defendant's claim. "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's finding and award. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed. . . . Put another way, the board is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Internal quotation marks omitted.) *Anderson* v. *R & K Spero Co.*, 107 Conn. App. 608, 613–14, 946 A.2d 273 (2008); see also Regs., Conn. State Agencies § 31-301-3 et seq.

In its motion to correct, the defendant sought, inter alia, the deletion of paragraphs fourteen and fifteen, as well as paragraph B of the commissioner's findings and

conclusion, and the insertion of paragraphs detailing the lack of credibility of the plaintiff. The defendant also requested the insertion of a paragraph stating that Kaplan's opinion that the plaintiff has "absolutely no work capacity through March 28, 2005, and then, on March 29, had unrestricted full duty capacity" was not logical. The commissioner denied these requests. Likewise, the board rejected the defendant's arguments with respect to the motion to correct. We address each of the defendant's arguments in turn.

A

In paragraph fourteen of the finding, the commissioner stated: "It is known and administratively noticed that [the defendant] withheld payment of temporary total disability payments during the period in question because [the plaintiff] was enmeshed in a departmental disciplinary hearing and was suspended without pay during its duration." We conclude that evidence in the record supports this finding.

At the May 8, 2006 hearing, the commissioner and counsel for the parties held a discussion off the record. The commissioner then requested that counsel for the defendant place his representations on the record. The assistant attorney general acknowledged that the plaintiff had been suspended and that, following a "quasi-judicial administrative hearing," was found to be entitled to reinstatement and was given "full pay going all the way back." The assistant attorney general then stated: "I want Your Honor to understand that in the [defendant] taking some of the positions that [it has] taken in this case, that part of [its] position was that since [the plaintiff] had, he was not working because of cause, which was his claimed misbehavior, that therefore was no entitlement to benefits because we interpret workers' compensation as being something where

someone is not getting wages because of lost opportunity, and if the lost opportunity would have been lost at any rate because of outside conduct, so therefore it's not justified."

We recently stated: "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them. . . . The statement relied on as a binding admission [however] must be clear, deliberate and unequivocal." (Citation omitted; internal quotation marks omitted.) *O & G Industries, Inc.* v. *All Phase Enterprises, Inc.*, 112 Conn. App. 511, 523 n.5, 963 A.2d 676 (2009); see also *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69 Conn. App. 824, 829–30, 798 A.2d 445 (2002).

We conclude that the statements by the defendant's counsel constitute a judicial admission. We are mindful of the general rule that "admissions, if relevant and material, made by an attorney incidental to the general authority of the attorney to represent his client in connection with and for the purpose of controlling the matter committed to him, are admissible against the client." *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 496, 234 A.2d 825 (1967); see also *Rockwell* v. *Quinter*, 96 Conn. App. 221, 234 n.10, 899 A.2d 738 (party may be bound by admission made in open court), cert. denied, 280 Conn. 917, 908 A.2d 538 (2006); *Levine* v. *Levine*, 88 Conn. App. 795, 804, 871 A.2d 1034 (2005) ("[a] party is bound by a concession made during the trial by his attorney" [internal quotation marks omitted]); *Shuster* v. *Buckley*, 5 Conn. App. 473, 479, 500 A.2d 240 (1985) (actions of attorney are binding on client).

The defendant's attorney admitted at the formal hearing that the plaintiff did not receive workers' compensation benefits during this time period and did not receive

his wages until the disciplinary matter had been resolved in his favor. We conclude that there was evidence in the record to support the findings set forth in paragraph fourteen of the commissioner's decision, and, therefore, the motion to delete paragraph fourteen properly was denied.

### B

In paragraph fifteen, the commissioner stated: "[The defendant] believed that it would prevail in [the disciplinary] hearing and that [the plaintiff] would then be obligated to refund money to the [state]. Their failure to pay temporary total disability benefits would minimize the amount [the plaintiff] would have to refund the [state]." We have conducted a complete review of the record and have discovered no basis to support this finding by the commissioner.

Only the plaintiff testified at the hearing, and he did not make any statements regarding the defendant's motives for not paying total disability benefits or concerns regarding repayment. The documentary evidence submitted to the commissioner consisted of the plaintiff's medical records, an affidavit setting forth the fees for the plaintiff's counsel, correspondence between the assistant attorney general and Kaplan, a printout showing payments made by the defendant to the plaintiff and Foster's deposition testimony. Nothing in the testimony or the documents addresses the defendant's subjective belief that it would prevail in the disciplinary hearing or its belief regarding the issue of repayment to the defendant. We conclude, therefore, that this constitutes a fact found without evidence and that it therefore was improper. Accordingly, the commissioner should have granted the motion to correct with respect to the deletion of paragraph fifteen.

### C

In paragraph B of the findings and conclusion to his decision, the commissioner stated: "Between June

16, 2004, and March 29, 2005, [the plaintiff] received only twelve weeks of temporary total disability payments. No other payments were forthcoming because [the defendant] sincerely believed that [the plaintiff] was going to be responsible to repay benefits as a result of the departmental hearing in which he was involved. When [the plaintiff] was exonerated in that hearing, [the defendant] paid all wages owed to [the plaintiff] for the period in question. If this were a novel, or a historical recitation, the fact that [the plaintiff] received all of his benefits would more easily lead to the conclusion that restitution had been made and, hence, there was no damage to the [plaintiff]. However, this is neither a novel nor a historical recitation. It is a real life situation involving a family and a man who must provide the necessities of life for the health and well-being of its members. A delay of more than nine months without benefits to which he was entitled is unreasonable. [The defendant] could not find justification in withholding payment by expecting to prevail in its disciplinary hearing . . . . This was an unreasonable delay and [the plaintiff] is entitled to interest at the statutory rate. [The plaintiff] is further entitled to attorney's fees in an amount to be determined by evidence and testimony at a future hearing." (Citation omitted.)

The parties agreed that the plaintiff had received only twelve weeks of temporary total disability payments and that the defendant had paid the plaintiff all of the wages owed following the resolution of the disciplinary hearing. However, as set forth in part II B, we conclude that the findings that (1) the defendant "sincerely believed that [the plaintiff] was going to be responsible to repay benefits as a result of the departmental hearing in which he was involved" and (2) "[the defendant] could not find justification in withholding payment by expecting to prevail in its disciplinary hearing" are not supported by the evidence. There is nothing in the

record to support the findings regarding the defendant's motivation. We conclude, therefore, that the commissioner should have granted the motion to correct with respect to these findings set forth in paragraph B of the commissioner's findings and conclusion.

## D

In its motion to correct, the defendant sought the inclusion of paragraphs eighteen through twenty.[12] The purpose of these additions was to set forth a finding establishing the plaintiff's lack of credibility. As we explain in part III, issues of credibility are reserved for the commissioner's determination. See *Anderson* v. *R & K Spero Co.*, supra, 107 Conn. App. 613–14. We conclude, therefore, that the commissioner properly denied the motion to correct with respect to insertion of paragraphs eighteen through twenty.

## E

The defendant also sought the inclusion of a proposed paragraph twenty-one, which stated: "Given the physical demands of [the plaintiff's] job with the state, it is

---

[12] The requested insertions, as set forth in the defendant's motion to correct, provided:

"18. Under cross-examination, the [plaintiff] was asked if from June, 2004-March, 2005, he had treated for any other body part other than his right shoulder. The [plaintiff's] answer [was that] '[Kaplan] . . . was also aware of a left shoulder injury and that I might have been incidentally treating for that at the same time.' He had no recall of getting injections for his left shoulder. T., pp. 18–19

"19. [The plaintiff's] testimony is contradicted by the medical record. When he went to Dr. Kaplan in August, 2004, it was because of both shoulders, and the [plaintiff] himself requested a left shoulder injections, which was then given. Dr. Kaplan, August 12, 2004 and February 23, 2004 report. On February 23, 2005, another injection was done on the left shoulder. Dr. Kaplan March 29, 2005 report.

"20. Comparing [the plaintiff's] testimony to the medical reports, for whatever reason, the [plaintiff] could reasonably be viewed as an unreliable witness. In fact, after Dr. Kaplan's December 15, 2004 report, it is [the plaintiff's] left should[er] which was his most pervasive problem. T., pp. 18–19, Dr. Kaplan's reports."

not logical that the [plaintiff] had absolutely no work capacity through March 28, 2005, and then, on March 29, had unrestricted full duty capacity." The defendant argues that it "is neither reasonable [n]or logical, in lieu of some extraordinary piece of evidence, to conclude that a person disabled from any gainful employment of any kind, in one day went from that status to a person cleared to perform unrestricted at a labor intensive employment."

The plaintiff's treating physician, following a course of treatment consisting of therapy and injections, endorsed the plaintiff's request for a full return to work. The defendant did not challenge this determination with its own expert. One of the commissioner's functions is to determine the weight of the evidence presented and the credibility of the testimony offered by expert witnesses. See *Anderson* v. *R & K Spero Co.*, supra, 107 Conn. App. 616. Contrary to the defendant's argument, the commissioner, having been presented with no expert testimony, was free to accept Kaplan's medical opinions regarding the plaintiff's work status. We conclude, therefore, that the commissioner properly denied the motion to correct with respect to this claim.

III

The defendant next argues that the commissioner improperly found the plaintiff to be a credible witness. Specifically, it argues that on the basis of the certain statements contained in the plaintiff's testimony, the commissioner should have found him to be an unreliable witness. We are not persuaded.

During cross-examination, the plaintiff was asked if, in June, 2005, he received treatment for any other medical condition besides his right shoulder. The plaintiff responded that he had been treated for asthma and other chronic illness not related to his shoulder. He then acknowledged that he may have received treatment for

a left shoulder injury but that he did not recall whether he received injections in that shoulder. The defendant argues that the failure to include immediately the fact that he had medical treatment with respect to his left shoulder, coupled with the fact that the medical reports indicated that he had received injections in that shoulder, demonstrated the plaintiff's lack of credibility.

We quickly may dispose of the defendant's claim. "It [is] the commissioner's function to find the facts and *determine the credibility of witnesses . . . .*" (Emphasis added; internal quotation marks omitted.) *Mleczko* v. *Haynes Construction Co.*, 111 Conn. App. 744, 748, 960 A.2d 582 (2008) Put another way, the commissioner is the sole arbiter of the credibility of witnesses. *Greene* v. *Aces Access*, 110 Conn. App. 648, 652, 955 A.2d 616 (2008); 1 A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2008) § 10.84.2, p. 1769.

On the basis of the commissioner's firsthand observation of the plaintiff's conduct, demeanor and attitude, he made a determination regarding the plaintiff and his testimony. See, e.g., *Tang* v. *Bou-Fakhreddine*, 75 Conn. App. 334, 352, 815 A.2d 1276 (2003). We decline the defendant's invitation to invade the province of the commissioner and make a contrary credibility determination on the basis of a cold, printed record. See, e.g., *Sokoloski* v. *McCorison*, 108 Conn. App. 296, 303, 947 A.2d 1022 (2008); 1 A. Sevarino, supra, § 10.85.1, pp. 1781–83 (commissioner's credibility assessment virtually inviolable).

IV

The defendant's final claim is that the commissioner improperly awarded attorney's fees to the plaintiff. We agree that the award of attorney's fee was improper.

General Statutes § 31-300 provides in relevant part: "In cases where, through the fault or neglect of the

employer or insurer, adjustments of compensation have been unduly delayed, or where through such fault or neglect, payments have been unduly delayed, the commissioner may include in the award interest at the rate prescribed in section 37-3a and a reasonable attorney's fee in the case of undue delay in adjustments of compensation and may include in the award in the case of undue delay in payments of compensation, interest at twelve per cent per annum and a reasonable attorney's fee. . . ." The decision to award attorney's fees is within the commissioner's discretion and dependent on the findings of fact. See *Coollick* v. *Windham*, 7 Conn. App. 142, 147, 508 A.2d 46 (1986).

The commissioner found that the defendant's failure to pay the disability benefits because it expected to prevail in the plaintiff's disciplinarily hearing was not justified and therefore unreasonable. This provided the sole articulated basis for the commissioner's award of attorney's fees. We previously have determined that the commissioner's finding as to why the defendant failed to pay the plaintiff disability payments was not supported by the record. Without a factual predicate underlying the award of attorney's fees, that award cannot stand.

In summary, we conclude that the commissioner improperly (1) failed to address the issue of offsetting the award to the plaintiff to prevent a double recovery, (2) failed to grant certain portions of the defendant's motion to correct and (3) awarded attorney's fees. On remand, the commissioner must determine the amount of the award to which the plaintiff is entitled and the amount of interest owed to the plaintiff.

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to reverse the determination of the workers' compensation commissioner and to remand the

case to the commissioner for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.