ROBERT THOMPSON *v.* RONNIE ROACH ET AL.
(AC 18006)

Foti, Hennessy and Sullivan, Js.

Argued January 22—officially released April 20, 1999

*Michael J. Belzer,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellant (defendant second injury fund).

*Michael J. McAuliffe,* for the appellee (named defendant et al.).

*Brendan T. Canty,* for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant second injury fund (fund) appeals from a decision of the workers' compensation review board (board) affirming an order by the workers' compensation commissioner (commissioner) transferring liability for workers' compensation benefits payable to the plaintiff, Robert Thompson, from the defendant workers' compensation carrier, Aetna Life and Casualty Company (Aetna), to the fund. The fund claims that the board improperly (1) determined that Aetna's difficulty in obtaining wage information excused it from the notice requirements of General Statutes § 31-349[1] and (2) affirmed the commissioner's denial of the fund's motion to correct.

---

[1] General Statutes § 31-349 (b) provides: "As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury

In his finding and award, the commissioner found the following facts. On November 6, 1988, the plaintiff suffered an injury to the lumbar region of his back. Preexisting degenerative changes in his back made his disability materially and substantially greater than it would have been otherwise. On January 30, 1989, Aetna began providing benefits to him.

On September 11, 1989, Pamela Keyes, an Aetna claims representative, informed the director of special

Fund; (2) include with the notification (A) copies of all medical reports, (B) an accounting of all benefits paid, (C) copies of all findings, awards and approved voluntary agreements, (D) the employer's or insurer's estimate of the reserve amount to ultimate value for the claim, (E) a two-thousand-dollar notification fee payable to the custodian to cover the fund's costs in evaluating the claim proposed to be transferred and (F) such other material as the custodian may require. The employer by whom the employee is employed at the time of the second injury, or its insurer, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. Failure on the part of the employer or an insurer to comply does not relieve the employer or insurer of its obligation to continue furnishing compensation under the provisions of this chapter. The custodian of the fund shall, by certified mail, notify a self-insured employer or an insurer, as applicable, of the rejection of the claim within ninety days after receiving the completed notification. Any claim which is not rejected pursuant to this section shall be deemed accepted, unless the custodian notifies the self-insured employer or the insurer within the ninety-day period that up to an additional ninety days is necessary to determine if the claim for transfer will be accepted. If the claim is accepted for transfer, the custodian shall file with the workers' compensation commissioner for the district in which the claim was filed, a form indicating that the claim has been transferred to the Second Injury Fund and the date that such claim was transferred and shall refund fifteen hundred dollars of the notification fee to the self-insured employer or the insurer, as applicable. A copy of the form shall be mailed to the self-insured employer or the insurer and to the claimant. No further action by the commissioner shall be required to transfer said claim. If the custodian rejects the claim of the employer or its insurer, the question shall be submitted by certified mail within thirty days of the receipt of the notice of rejection by the employer or its insurer to the commissioner having jurisdiction, and the employer or insurer shall continue furnishing compensation until the outcome is finally decided. Claims not submitted to the commissioner within said time period shall be deemed withdrawn with prejudice. If the employer or insurer prevails, or if the custodian accepts the claim all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or insurer by the Second Injury Fund."

funds by certified mail that the plaintiff had been injured and that Aetna intended to seek a § 31-349 transfer of liability to the fund. Keyes sent a second letter dated October 22, 1990, stating: "Voluntary Agreements have not been issued as yet as we are still awaiting receipt of the [plaintiff's] wages. Our insured is now defunct . . . therefore, any salary information will now have to be provided by [the plaintiff]. He has yet to provide us with the same. This letter has been written as we do not want to jeopardize the potential transferral of this case into the Fund with late notice." On February 25, 1992, the plaintiff's attorney provided Aetna with the necessary wage statement. On July 31, 1992, the voluntary agreement was executed, and the commissioner approved it on August 7, 1992. Keyes sent the fund a letter with the voluntary agreement and the plaintiff's medical records on August 24, 1992. Timely notice under § 31-349 would have been due on October 28, 1990.

I

The fund claims that the board improperly concluded that Aetna was excused by impossibility from the statutory notice requirements. Specifically, the fund's argument is that (1) impossibility does not excuse untimely notice and (2) the board improperly determined that compliance was impossible, which was not found by the commissioner.

A

Section 31-349 (b) provides in relevant part: "As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail . . . no later than ninety days after completion of payments for the first one hundred and four weeks of disability . . . of its intent to transfer liability for the claim to the Second Injury Fund; (2) include with the notification . . . (C)

copies of all findings, awards and approved voluntary agreements . . . ."

"The object of the ninety-day statutory notice is to enable the fund to be apprised promptly of such a claim being made, to obtain a copy of the agreement or award and to have immediate access to all medical reports. Such information is essential to enable the fund to assess promptly its alleged liability and to establish immediately its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it." *Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 188, 384 A.2d 363 (1978).

"It is well settled that notice provisions under the [workers' compensation] act should be strictly construed." *Soares* v. *Max Services, Inc.*, 42 Conn. App. 147, 164, 679 A.2d 37, cert. denied, 239 Conn. 915, 682 A.2d 1005 (1996). Our requirement of strict compliance with § 31-349, however, has presumed the possibility of compliance.[2] Where notice, such as providing the fund with a voluntary agreement, is impossible to give, the failure to comply strictly with § 31-349 will not preclude a transfer of liability. See *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 392–93 n.10, 618 A.2d 1340 (1993). Under such circumstances, notice will be considered timely if provided within a reasonable period of time thereafter. *Marano* v. *Timex Corp.*, 14 Conn. Workers' Comp. Rev. Op. 207 (1995); *Reising* v. *General Dynamics Electric Boat Division*, 13 Conn. Workers' Comp. Rev. Op. 40 (1994).

## B

The fund asserts that the commissioner did not determine that timely notice was impossible. Instead, the

---

[2] Neither this court nor the Supreme Court has considered the circumstance where compliance with an element of § 31-349 is impossible. In those cases where we have insisted on strict compliance, strict compliance was

fund asserts that the board exceeded the scope of its authority and made that determination itself. We disagree.

"[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted.) *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 117–18, 411 A.2d 924 (1979).

The commissioner found that Keyes had written twice to the fund to inform it of Aetna's intent to transfer liability and of Aetna's inability to obtain wage information necessary to formulate a voluntary agreement. The evidence showed that the employer was defunct and that Aetna was unable to obtain wage information from the employer. Shortly after receiving that information from the plaintiff's attorney and formulating a voluntary agreement, Aetna forwarded the agreement to the fund. Without using the term impossible, the commissioner found that it was not possible for Aetna to have complied with the statute despite its efforts. The board affirmed that finding. We conclude that the board properly affirmed the commissioner's decision.

## II

The fund also claims that the commissioner improperly denied its motion to correct and, therefore, the board should have ordered the commissioner to correct his finding. We disagree.

"The finding of the commissioner cannot be changed 'unless the record discloses that the finding includes

---

possible. See, e.g., *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 618 A.2d 1340 (1993); *Fresta* v. *Connecticut Mason Contractors, Inc.*, 43 Conn. App. 732, 685 A.2d 698 (1996); *Soares* v. *Max Services, Inc.*, supra, 42 Conn. App. 147.

facts found without evidence or fails to include material facts which are admitted or undisputed.' *Wheat* v. *Red Star Express Lines*, 156 Conn. 245, 248, 240 A.2d 859 (1968). 'It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted.' . . . Id., 249. A material fact is one that will affect the outcome of the case. See *Tutsky* v. *YMCA of Greenwich*, 28 Conn. App. 536, 540, 612 A.2d 1222 (1992)." *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 599, 630 A.2d 136 (1993), appeal dismissed, 229 Conn. 587, 642 A.2d 721 (1994) (certification improvidently granted).

The fund's motion to correct proposed additional findings regarding the efforts Aetna made to obtain the wage information. In part I of this opinion, we rejected the fund's interpretation of the law in that respect. Because the proposed factual additions would not change the commissioner's conclusions and because those conclusions are proper, we conclude that the board properly affirmed the commissioner's decision.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.