******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESTATE OF ROBERT G. HABUREY *v.* TOWN OF
WINCHESTER ET AL.
(AC 35802)

Bear, Sheldon and Flynn, Js.*

*Argued March 6—officially released May 23, 2014***

(Appeal from Compensation Review Board.)

*Richard S. Bartlett*, for the appellants-cross appel-

lees (defendants).

*Maureen O'Doherty*, for the appellee-cross appellant (plaintiff).

*Opinion*

FLYNN, J. The defendants, the town of Winchester (town) and the Connecticut Interlocal Risk Management Agency, appeal from the decision of the Workers' Compensation Review Board (board), affirming the decision of the Workers' Compensation Commissioner (commissioner) awarding the plaintiff, Shirley Haburey,[1] burial expenses and survivorship benefits, pursuant to General Statutes § 31-306 (1) and (3) respectively. In this appeal, the defendants claim that the board erred in affirming the commissioner's determinations that (1) he had subject matter jurisdiction to hear this claim although the plaintiff never filed a notice of claim for benefits; (2) there was insufficient factual support to justify a finding that the plaintiff's husband, Robert Haburey (decedent), died as a result of Legionnaires' Disease; and (3) there was insufficient medical, scientific, or epidemiological evidence to support the commissioner's decision that the decedent sustained an occupational disease arising out of and in the course of his employment with the town.

We conclude that the board properly affirmed the commissioner's conclusion that it had subject matter jurisdiction because, contrary to the claim of the defendants, the plaintiff had filed a timely notice of claim using form 30c, which at the time of filing was the form used by the Workers' Compensation Commission (commission) to claim survivor benefits. The inevitable conclusion from the commissioner's findings and award is that he found that the notice given not only was timely, but was sufficient to put the defendants on notice that a claim for survivorship benefits was being made, a factual finding to which the board and we give deference. We further conclude that the board properly affirmed the commissioner's finding that the decedent's death was caused by Legionnaires' Disease resulting from his job raking raw sewage from intake grates and his exposure to splashes of untreated sewage and/or aerosolized raw sewage mist in the pump house. Finally, we conclude that the board properly affirmed the commissioner's determination that the decedent sustained an occupational disease that arose out of and in the course of his employment with the town. Therefore, we affirm the board's decision.[2]

The following facts and procedural history inform our analysis. At the time of his death, the decedent and the plaintiff were married. The decedent was employed by the town; he worked in its wastewater treatment plant from 1972 until his death in 1996. The decedent worked in the influent pump house. His job was to clear grates of raw sewage, either by raking the grates or hosing them using a high-pressure power hose. Untreated sewage would come into the building and accumulate at the grates, requiring the raw sewage to be raked from the grates every couple of hours during

an eight hour shift. There often was a mist present in the pump house from the sewage. When the grates were not raked for extended periods of time, sewage would spill onto the floor of the influent pump house. Sometimes, untreated sewage would splash onto the decedent as he worked. The only safety equipment provided to the decedent were gloves and overshoes.

Prior to his illness in April of 1996, the decedent was healthy and physically active. The decedent began feeling ill approximately one week before he sought treatment at Winsted Memorial Hospital on April 10, 1996. He was evaluated, treated for a viral syndrome with dehydration, and released from the hospital. He returned to the hospital later that day, where he was examined by Dr. David Lawrence and admitted. His chief complaints included muscle aches and soreness, shortness of breath, and abdominal discomfort. Dr. Lawrence testified that when he first laid eyes on the decedent, he could tell that he was suffering from a serious infection.

The decedent was evaluated by a surgeon, Dr. George Record, because of his complaint of abdominal pain, and Dr. James O'Halloran, an infectious disease specialist. Dr. Record concluded that there was nothing significant occurring in the decedent's abdomen to explain his symptoms. Blood tests were performed and a chest X ray was taken. The blood tests showed a significantly elevated white blood cell count, indicating that the decedent was suffering from a severe infection. Dr. Lawrence concluded that the decedent was suffering from septic shock, the cause of which was unknown. Further testing and an additional chest X ray showing signs of pneumonia led Dr. Lawrence to broaden the antibiotic spectrum administered to the decedent to include treatment for Legionella. The decedent did not improve from the antibiotic therapy he received, and he died on April 12, 1996 from "overwhelming sepsis," the cause of which was unknown at that time to his doctors. An autopsy was performed on the decedent and showed inflammation in his left lung, greater than in the right, and erythremia[3] of his trachea. The finding of pneumonic process is consistent with Legionella.

Notice of claim was filed with the commission on January 3, 1997, using form 30c. This form was completed by an attorney. In the space on the form captioned "Injured Worker Information," the decedent is listed. In the space on the form captioned "Employer Information," the town is identified. Finally, under the caption "Injury Information," the decedent's injury is described as "massive sepsis from infection contacted at work."[4] Additionally, under that caption, the form indicated that "[t]he decedent came in contact with a virus at work which resulted in his death." The form 30c does not provide space for one to specify on whose behalf the claim is filed. On its face, the specific form

30c filed in this case does not elucidate whether the claim was filed on behalf of the decedent's estate or on behalf of the plaintiff. This problem has since been addressed through the adoption of form 30d, which is designed specifically for dependents' claims. See Workers' Compensation Commission, "Online Forms," (last modified May 13, 2014), available at http://www.wcc.state.ct.us/download/forms.htm#FORMS (last visited May 23, 2014) (copy contained in the file of this case in the Appellate Court clerk's office). The new form 30d was adopted on September 24, 2007[5] and is titled "Dependent's Notice of Claim" and, unlike form 30c, provides separate spaces to identify the dependent and the deceased worker.

The defendants filed a form 43 stating that they intended to contest liability on the grounds that (1) the cause of the decedent's death did not arise out of and in the course of his employment, and (2) a causal relationship had not been proven sufficiently. The form 43 filed by the defendants contested only the factual basis of the claim, namely, whether the decedent's "massive sepsis" was a work related injury. The defendants did not raise their jurisdictional argument in this first filing. In fact, the jurisdictional argument was not raised until 2009, twelve years after the claim in this case first was filed.

The claim remained stagnant until September 18, 2009, when the defendants filed a motion to dismiss, claiming that the commissioner lacked subject matter jurisdiction over the claim. The commissioner denied the defendants' motion on May 7, 2010. Thereafter, the commissioner held four hearings in 2011 and 2012 and issued a written decision on May 30, 2012. The commissioner concluded that "[t]he pathogen that killed [the decedent] was Legionella" and that "[the decedent's] death arose out of and in the course of his employment." Accordingly, the plaintiff was awarded burial expenses for the costs of the decedent's interment and survivorship benefits, pursuant to § 31-306 (1) and (3) respectively. On May 30, 2012, the defendants paid the plaintiff $4000 for the decedent's burial expenses, $543,537.32 in back survivorship benefits, and commenced biweekly payments of survivorship benefits. The defendants filed a motion to correct with the commissioner, which was denied. Thereafter, they filed an appeal with the board on June 19, 2012. The board held a hearing on November 30, 2012, and issued its decision on June 14, 2013, affirming the commissioner's decision. This appeal followed.

I

We first address the defendants' claim that the board erred in concluding that the commissioner had subject matter jurisdiction to adjudicate this claim. Specifically, the defendants argue that the commissioner lacked subject matter jurisdiction over the plaintiff's claim, as

dependent widow of the decedent, because she never filed a notice of claim for benefits as required by General Statutes § 31-294c (a). We disagree.

We begin by setting forth our standard of review. To the extent that the commissioner's factual determinations are challenged on appeal, we must defer to the finder of facts, the commissioner, unless his findings are unsustainable. See *Sapko* v. *State*, 305 Conn. 360, 371, 44 A.3d 827 (2012); *Thompson* v. *Roach*, 52 Conn. App. 819, 824, 728 A.2d 524, cert. denied, 249 Conn. 911, 733 A.2d 227 (1999).

"It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board . . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 844, 930 A.2d 653 (2007). Because the filing of a notice of claim implicates the commissioner's subject matter jurisdiction; see *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 534 n.14, 829 A.2d 818 (2003); we review this determination applying a plenary standard of review. *O'Donnell* v. *Waterbury*, 111 Conn. App. 1, 5, 958 A.2d 163, cert. denied, 289 Conn. 959, 961 A.2d 422 (2008). Additionally, "[i]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Id.

Section 31-294c (a) provides in pertinent part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. . . ."

The defendants contend that our Supreme Court's decision in *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 525, is dispositive of this appeal. In *Kuehl*, the plaintiff's husband suffered debilitating injuries from a motor vehicle accident occurring in the course of his employment. Id., 527–28. Notice of claim was filed with the commission by the husband for workers' compensation benefits on December, 16, 1991. Id., 528. This claim was contested by the husband's

employer and its insurer. Id. Separately, the husband brought a lawsuit against the driver of the vehicle that injured him; the husband's employer intervened in that suit to recover benefits which it had already paid to the husband. Id., 529. The husband died during the pendency of that suit, on November 14, 1992, and the plaintiff pursued her husband's suit in her capacity as executrix of his estate. Id.

Approximately six years later, the *Kuehl* plaintiff requested a hearing for survivorship benefits in accordance with § 31-294c (a), "notwithstanding her failure to file a timely notice of claim for compensation . . . ." Id., 530. "Although the [husband] previously had filed a notice of claim for compensation in connection with his claim for workers' compensation benefits, the plaintiff [in *Kuehl*] did not file a separate notice of claim in connection with her claim for survivor's benefits." Id., 530 n.8. Our Supreme Court rejected the plaintiff's argument that service of the complaint on the husband's employer in the prior action against the driver satisfied the jurisdictional requirements of § 31-294c (a). Id., 534–35. Thus, our Supreme Court held that the plaintiff's failure to file notice of claim divested the commission of subject matter jurisdiction to hear her claim. Id., 532. The court also rejected the plaintiff's secondary argument that the savings provisions of subsection (c) of § 31-294c permitted her claim to proceed.[6] Id., 537. The *Kuehl* court held that "[the] savings provision addresses a 'defect or inaccuracy' in a notice of claim for compensation; it does not excuse, however, the *failure to file* a notice of claim." (Emphasis in original.) Id. Relying on this language from *Kuehl*, the defendants in the present case contend that the commissioner was without jurisdiction to hear the plaintiff's claim, because, they argue, notice of claim never was filed by the plaintiff.

We agree with the board's conclusion that the commissioner properly determined that this case is not controlled by *Kuehl*. As discussed previously in this opinion, *Kuehl* concerned the failure of a dependent to file any notice of claim for survivorship benefits, and whether that failure could be cured by her husband's previously filed notice for workers' compensation benefits. See *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 537. In the present case, by contrast, timely notice of claim *was filed*. The parties are in agreement that *a* notice of claim was filed in this case. The board observed that "the notice clearly states that the claim for benefits is predicated on the death of the claimant." The question is whether that filing constituted a claim that was filed by the widow for survivorship benefits.[7]

Our inquiry therefore reduces to determining whether the form 30c filed on January 3, 1997, was filed on behalf of the decedent's estate or by the plaintiff widow.

The form does not provide space to specify which type of benefits was being sought: benefits for an injured worker (or his estate) or for a dependent spouse. The form 30c filed in this case refers neither to the "estate of Robert Haburey" nor to his surviving spouse, the plaintiff. In the description section of the form, it states: "The decedent came in contact with a virus at work which resulted in his death." This reference to "[t]he decedent" alerted the defendants that the notice of claim filed pertained to claims arising from the decedent's death.

Accordingly, two possible inferences could be drawn from the form 30c that was filed in this case. The first inference, urged by the defendants, is that the claim was filed by the estate of the decedent, to compensate his estate for the decedent's lost wages during his brief hospitalization immediately preceding his death, and for his medical expenses. The second inference, urged by the plaintiff, is that the form 30c was filed on behalf of the plaintiff for survivorship benefits as her husband's surviving spouse. Choosing between these two inferences is a question of fact, which is within the commissioner's province. *Thompson* v. *Roach*, supra, 52 Conn. App. 824 ("[t]he power and duty of determining the facts rest on the commissioner, the trier of facts" [internal quotation marks omitted]). There is no evidence in this record that an estate ever was opened on behalf of the decedent on or before January 3, 1997, when notice of claim was filed. Had the commissioner accepted the inference urged by the defendants, the only claim would have been for the payment of lost wages for the three days the decedent was hospitalized preceding his death, plus his medical expenses. The decedent was paid an hourly rate of $15.64 and worked an eight hour shift. Therefore, his claim for lost wages during his three day hospitalization would have been $375.36, less any statutory caps and less any applicable federal and state taxes. See General Statutes §§ 31-294d and 31-307.

"The [commissioner] alone is charged with the duty of initially selecting the inference [that] seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Internal quotation marks omitted.) *Sapko* v. *State*, supra, 305 Conn. 371. In his rulings, the commissioner selected the latter of these two inferences and determined that the form 30c was filed on behalf of the decedent's widow, the plaintiff, rather than on behalf of the decedent himself, or his estate. We conclude that it was reasonable for the commissioner to select this inference, and the defendants have not met their burden of convincing us otherwise. Absent an extraordinarily strong showing that this choice was erroneous, like the board, this court "is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, 115 Conn. App. 306,

315, 971 A.2d 853, cert. denied, 293 Conn. 919, 979 A.2d 490 (2009).

Moreover, the savings provision of the workers' compensation statute, § 31-294c (c), cautions against overly technical dismissal of workers' compensation claims. We have held that because "workers' compensation is remedial legislation with a humanitarian purpose, we liberally construe its provisions in favor of the [claimant]. . . . As a result, strict compliance with a notice of claim is not required as long as it puts the employer on notice to make a timely investigation." (Citations omitted.) *Tardy* v. *Abington Constructors, Inc.*, 71 Conn. App. 140, 149–50, 801 A.2d 804 (2002). Furthermore, our Supreme Court has held that, "sufficient notice of claim for compensation under § 31-294c (a) requires that the plaintiff reasonably inform the employer or commissioner of his or her intent to pursue a claim specifically under the state act." (Internal quotation marks omitted.) *Chambers v. Electric Boat Corp.*, supra, 283 Conn. 856.[8] We conclude that the board properly concluded that the plaintiff's January 3, 1997 notice of claim sufficiently put the defendants on notice of the plaintiff's claim for workers' compensation survivorship benefits.

We conclude that the jurisdictional requirements of § 31-294c (a) were satisfied in this case, in that timely notice of claim was filed by the plaintiff with the commission. The decedent died on April 12, 1996. Notice of claim was filed with the commission on January 3, 1997. Therefore, the claim was timely filed within the statutorily mandated one year filing period. See General Statutes § 31-294c (a). We further recognize that the savings provision of that statute cautions against arbitrary dismissal of the plaintiff's claim. Therefore, we affirm the board's conclusion that the commissioner had subject matter jurisdiction in the present matter to hear the plaintiff's claim.

II

We next consider whether the board erred in affirming the commissioner's determination that the decedent died as a result of Legionnaires' Disease. The defendants contend that "the [plaintiff] failed to present sufficient medical evidence to support the . . . commissioner's conclusion that [Legionnaires'] Disease was the cause of the sepsis which led to [the decedent's] death." We disagree.

"Before addressing the specific claims presented by [defendants], we set forth certain general principles pertaining to our workers' compensation jurisprudence. Our workers' compensation scheme indisputably is a remedial statute that should be construed generously to accomplish its purpose . . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for

workers' compensation [benefits]. . . . To recover under the Workers' Compensation Act [General Statutes § 31-275 et seq.], a plaintiff must prove that the claimed injury is connected causally to the employment by demonstrating that the injury (1) arose out of the employment and (2) occurred in the course of the employment." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, supra, 115 Conn. App. 310; see also *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 591, 986 A.2d 1023 (2010). "The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." (Internal quotation marks omitted.) *O'Reilly* v. *General Dynamics Corp.*, 52 Conn. App. 813, 815, 728 A.2d 527 (1999); see also *Sapko* v. *State*, supra, 305 Conn. 371.

"A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board pursuant to General Statutes § 31-301." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, supra, 115 Conn. App. 310. "The appropriate standard applicable to the board when reviewing a decision of a commissioner is well established. [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts." (Internal quotation marks omitted.) *O'Reilly* v. *General Dynamics Corp.*, supra, 52 Conn. App. 815–16.

Similarly, on appeal to this court, "[o]ur role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them . . . . [Therefore, we ask] whether the commissioner's conclusion can be sustained by the underlying facts." (Citation omitted; internal quotation marks omitted.) Id., 816; see also *McFarland* v. *Dept. of Developmental Services*, supra, 115 Conn. App. 311.

"It matters not that the basic facts from which the [commissioner] draws this inference are undisputed rather than controverted . . . . It is likewise immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference [that] seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Internal quotation marks omitted.) *Sapko* v. *State*, supra, 305 Conn. 371; see also *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 36, 787 A.2d 541 (2002); *Fair* v. *People's Savings Bank*, 207 Conn. 535, 540, 542 A.2d 1118 (1988).

We conclude that the commissioner's determination that the decedent died as a result of Legionnaires' Disease is sustainable in light of the underlying facts contained in the record. We further conclude that the board's decision affirming the commissioner did not

result from an incorrect application of the law to the facts of this case, nor from an illegal or unreasonable inference drawn therefrom.

The commissioner concluded that "[t]he pathogen that killed [the decedent] was Legionella." The defendants argue that this conclusion, "based upon testimony of Dr. David Lawrence, the physician who treated [the decedent] during his hospitalization, that the cause of the sepsis which led to [the decedent's] death was Legionnaires' Disease, caused by bacteria identified as Legionella transmitted through the inhalation of contaminated water particles . . . lacks the support of subordinate medical facts." We disagree.

As described by the board in its decision, "Lawrence indicated [in his deposition] that the [decedent] was initially administered a broad spectrum of antibiotics to counteract sepsis, and a drug known to be effective against Legionella was added when the doctor received the results of a lung x-ray demonstrating infiltrates in the [decedent's] left lower lobe. Dr. Lawrence testified that [Legionnaires'] Disease is a known cause of sepsis; however, the [decedent] did not live long enough to obtain confirming laboratory results for Legionella . . . which would have needed to be repeated in two to four weeks."

Dr. Lawrence was called to testify at a formal hearing before the commission, where he delivered essentially the same testimony that he gave in his deposition. He testified that his conclusion that the decedent died after contracting Legionnaires' Disease was "based on reasonable medical probability." Dr. Lawrence explained that his opinion concerning the cause of death of the decedent had changed since 1996 because his basis of medical knowledge had expanded to include a greater understanding of individual pathogens. He further explained the differential diagnosis process he employed which allowed him to "narrow . . . the list of possible causes for the [decedent's] symptoms until he could conclude with reasonable medical certainty that [he] died of [Legionnaires'] Disease." Dr. Lawrence testified that "Legionella was included in my differential diagnosis when I was determining the spectrum of antibiotics I was using." When questioned about advances in medical technology since the decedent's death, Dr. Lawrence testified, "I feel that . . . [the decedent] died of Legionella."[9] The commissioner found Dr. Lawrence's testimony persuasive.[10]

Having thoroughly reviewed the record and the decisions of the commissioner and board, we agree with the board's conclusion that there is "sufficient support [in the record] for the trial commissioner's conclusion that the [decedent's] death was due to [Legionnaires'] Disease . . . ." "[O]ur task is not to determine whether a conclusion different from the one arrived at could have been reached, but rather to determine if there

was *some evidence* on which the [finder of fact] might reasonably have reached its conclusion." (Emphasis in original.) *Menon* v. *Dux*, 81 Conn. App. 167, 174, 838 A.2d 1038, cert. denied, 269 Conn. 913, 852 A.2d 743, cert. denied, 543 U.S. 1003, 125 S. Ct. 623, 160 L. Ed. 2d 463 (2004).

The defendants attempt to employ an exacting standard, contending that the commissioner's conclusion was erroneous because "[t]he existence of [Legionnaires'] Disease in a patient can be confirmed by laboratory testing" and no empirical confirmation occurred in this case. They argue that "all the laboratory studies done at the hospital performed during [the decedent's] hospitalization revealed negative results." Dr. Lawrence testified, however, that the cause of the decedent's sepsis could not be identified at the time of this death because the pathogen was not recovered. In any event, such an exacting standard of proof, as urged by the defendants, is not required. "Unlike Aristotelian and Thomistic logic, law does not demand metaphysical certainty in its proofs." *Curran* v. *Kroll*, 118 Conn. App. 401, 408, 984 A.2d 763 (2009), aff'd, 303 Conn. 845, 37 A.3d 700 (2012). Rather, the commissioner need only be convinced that that it was "reasonably probable" that the decedent died of Legionnaires' Disease. See *DiNuzzo* v. *Dan Perkins Chevrolet GEO, Inc.*, 294 Conn. 132, 142, 982 A.2d 157 (2009) ("[t]o be reasonably probable, a conclusion must be more likely than not" [internal quotation marks omitted]).

The defendants also rely on other pieces of evidence in the record to cast doubt on the conclusion that the decedent died of Legionnaires' Disease. Some of the evidence includes: one doctor's statement that he doubted that the decedent had Legionnaires' Disease; that at the time when the decedent was being treated, hospital physicians were unable to determine the cause of the decedent's sepsis; a 1996 report by Dr. Lawrence concluding that the decedent probably died from a virus; and the fact that the decedent did not exhibit all of the "key features" of Legionnaires' Disease described in an article referenced by Dr. Lawrence. The defendants conclude by arguing: "[B]ased upon the facts presented above . . . although [Legionnaires'] Disease is a cause of sepsis, the [plaintiff] failed to present subordinate facts which support the conclusion that it was the cause of [the decedent's] sepsis." We disagree. The commissioner was well within his authority to choose which evidence he found persuasive and which evidence he found unpersuasive, and adjudicate the claim accordingly. "As the fact finder, the commissioner may reject or accept evidence . . . ." (Internal quotation marks omitted.) *Holmes* v. *G.A. Masonry Corp.*, 76 Conn. App. 563, 568, 820 A.2d 1071 (2003). It is not the province of this court to second-guess the commissioner's factual determinations. "[T]he trier of fact—the commissioner—was free to determine the weight to be

afforded to [the] evidence." *Marandino* v. *Prometheus Pharmacy*, supra, 294 Conn. 594. This court, like the board, "is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, supra, 115 Conn. App. 315. Accordingly, we conclude that there is sufficient evidence in the record from which the commissioner reasonably could have concluded that the decedent died of Legionnaires' Disease.

III

Finally, we consider whether there was sufficient medical, scientific, or epidemiological evidence for the commissioner to conclude that the decedent sustained an occupational disease arising out of and in the course of his employment with the town. The defendants argue that "[t]here was no medical or scientific evidence presented at trial to support the [c]ommissioner's conclusion that [the decedent] contracted [Legionnaires'] Disease at his place of employment." We disagree.

The commissioner concluded: "Given the peculiar nature of daily exposure to a plethora of pathogens by employees such as [the decedent] who work directly with raw sewage, the sepsis caused by Legionella in this case is considered an occupational disease. [The decedent's] death arose out of and in the course of his employment." Before the commissioner, Dr. Lawrence testified that Legionella is a water-borne organism that enters the human system through the inhalation of contaminated water particles. He further explained that Legionella has been linked to infection of sewage workers. Dr. Lawrence testified that "[e]ven with a broad list of potential pathogens, regardless of my opinion of the pathogen, I cannot think of any other place that [the decedent] would have been where he was likely to contact something that would do this to him." Considering other potential places and sources of exposure, Dr. Lawrence concluded that he "[could not] think of any other source of exposure that [the decedent] had outside of his workplace . . . . I cannot find on my list a likely source, anything that ranks anything near the sewage plant." The commissioner concluded that "Lawrence's opinion that [the decedent] contracted the Legionella at his place of employment is . . . persuasive, especially in light of the fact that his co-workers were similarly ill at the same time, while the general population was not."[11]

The following findings by the commissioner are of particular significance. The commissioner concluded that "[t]he [decedent] worked almost exclusively in the area of the wastewater treatment plant where the sewage is untreated. He was exposed to splashing of raw sewage on his clothes and skin while raking grates and washing tanks with high pressure hoses. The only safety gear apparently worn or provided to the employees at

the time at issue were gloves and overshoes." Given "the presence of a cool mist in the fluent pump room" the commissioner concluded that the "the [decedent] was exposed to aerosolized raw sewage." Lastly, the commissioner noted that "[i]t is undisputed . . . that [the decedent] was exposed to pathogens in the wastewater influent at the treatment plant."

After a thorough review of the record and the decisions of the commissioner and board, we agree with the board's conclusion that there is "sufficient support for the trial commissioner's conclusion that the [decedent's] death was due to [Legionnaires'] Disease which he contracted while working at the wastewater treatment plant." We conclude that the record was adequate for the commissioner to determine that the occupational disease arose out of and in the course of the decedent's employment. Although there is other evidence in the record upon which a contrary conclusion could have been reached, that is not the inquiry. We do not retry facts. See *O'Reilly* v. *General Dynamics Corp.*, supra, 52 Conn. App. 816. Rather, our review is limited to asking whether the commissioner's conclusion could be sustained in light of the factual record. Id. We conclude that it is easily sustained in light of this record.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date or oral argument.

** May 23, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Although the appeal in this case was filed with the caption *Estate of Robert G. Haburey* v. *Town of Winchester et al.*, we refer in this opinion to Shirley Haburey as the plaintiff.

[2] We dismiss the plaintiff's cross appeal because she is not aggrieved by the board's decision. See Practice Book § 61-8; *Scarsdale National Bank & Trust Co.* v. *Schmitz*, 24 Conn. App. 230, 233, 587 A.2d 164, cert. denied, 229 Conn. 923, 642 A.2d 1215 (1994). In so far as the plaintiff briefed two alternative grounds for affirmance, in the interest of judicial economy, we decide them and determine that both are meritless. The first is that the commissioner's decision should be affirmed because the board erred in denying the plaintiff's motion to dismiss the defendants' appeal, in which the plaintiff claimed that the defendants waived their right to appeal by paying the award before taking an appeal to the board. The second is that payment of the award by the defendants rendered the appeal to the board moot. We affirm the board's decision. We conclude, as did the board, that General Statutes § 31-301 (f) renders these arguments unavailing. Section 31-301 (f) provides in pertinent part: "During the pendency of any appeal of an award made pursuant to this chapter, the claimant shall receive all compensation . . . payable under the terms of the award . . . ."

[3] Erythremia is a "[r]edness due to capillary dilation." Stedman's Medical Dictionary (27th Ed. 2000) p. 615.

[4] The defendants claim that "[o]n January 3, 1997, [the decedent] filed a Notice of Claim . . . ." We find this contention unpersuasive, given that the decedent died nearly one year before notice of claim was filed.

[5] See *Greenberg* v. *ABB Combustion Engineering Services, Inc.*, No. 5521, CRB 1-10-1 (June 11, 2012).

[6] The savings provision, § 31-294c (c), states in pertinent part: "No defect or inaccuracy of notice of claim shall bar maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning the personal injury and was prejudiced by the defect or inaccuracy of the notice."

[7] The defendants rely on our Supreme Court's holding in *Biederzycki* v. *Farrel Foundry & Machine Co.*, 103 Conn. 701, 704, 131 A. 739 (1926), for the proposition that claims brought by disabled workers and claims brought by their dependents are separate and distinct, each requiring a separate notice of claim. The continued validity of this holding is not an issue in the case before us. Rather, as we stated previously in this opinion, the question we must address in this case is on whose behalf the January 3, 1997, notice of claim was filed. The commissioner determined that the notice of claim in this case was filed on behalf of the decedent's widow for survivorship benefits.

[8] The defendants rely on our Supreme Court's decisions in *Chambers* v. *Electric Boat Corp.*, supra, 283 Conn. 840, and *Fredette* v. *Connecticut Air National Guard*, 283 Conn. 813, 930 A.2d 666 (2007), for the proposition that a surviving spouse must file a separate notice of claim, and may not simply rely on a notice of claim filed by an employee-spouse prior to their death. We accept that as a proper statement of our law. For reasons explained previously in this opinion, however, we conclude that is not the procedural posture of the case before us. Furthermore, we are not persuaded that these two cases are relevant to our resolution of this appeal, given that they address when notice of claim is filed timely. See *Chambers* v. *Electric Boat Corp.*, supra, 842; *Fredette* v. *Connecticut Air National Guard*, supra, 815–16. Timeliness of filing is not an issue in the case before us.

[9] The commissioner concluded: "An autopsy was performed on [the decedent] and notable findings included some inflammatory process in the left lung greater than right, and erythremia of the trachea. The finding of pneumonic process is consistent with Legionella."

[10] Likewise, the commissioner found unpersuasive the testimony of the defendants' expert, Dr. Brian Cooper, an infectious disease specialist, who testified that it was very unlikely that the decedent contracted Legionnaires' Disease.

[11] A total of four employees worked in the sewage plant in April, 1996. Two of the decedent's colleagues were ill with symptoms very similar to the decedents during the same time period. The fourth employee, who worked in the lab at the plant, never became ill.